Good morning, Your Honors. Marta Van Landingham from the Office of the Federal Public Defender, appearing on behalf of Appellant Paul Cox, Jr. I'd like to reserve a little bit of time for rebuttal. Paul Cox was convicted on the basis of the absence of a gun. If there had been a gun held by the victim, Kelvin Redd, then what happened on the night that Redd was killed is that he had a gun in his hand, and Redd's companions approached Paul Cox, threatening him, came within six to ten feet of where Mr. Cox was standing just in front of his baby son, and then Mr. Redd attempted to draw his gun. In that case, Paul Cox shot him, having no choice, in perfect self-defense. Now, the only witness who can tell us, number one, from an unbiased point of view, that Redd did have a gun and attempted to draw it, but fortunately for Mr. Cox, had trouble doing so, is Mr. Redd. And number two, the only witness who can tell us at all, that what happened to the gun after Mr. Redd was shot, that his companions removed it, and that's why it was no longer present when the police arrived, is newly discovered witness, Robert Hanna. Now, this evidence would have been, would have changed the sentence at trial. Based on what the jurors heard, they had, what it boiled down to, was basically, he said, he said, evidence from impeachable witnesses. As to whether or not Redd tried to draw a gun. And on that basis... She said, I mean, there were, I mean, there was at least one, maybe two eyewitnesses in addition to the defendant himself who testified that they saw a gun, right? Right. One of them was Robert Grant, who was a friend of Paul Cox, the defendant. And he was impeached not only in light of a number of felonies, but also in light of how his testimony had changed from when he'd been questioned by the police considerably. This is not in the record, but Hanna obviously has some felonies, too, because that's why he made him in prison. Correct. What makes him unbiased is the fact that he did not know. He's the only defense witness who did not know Paul Cox at all before the event. Let me tell you what I find complicated here. The, the district court said that he was accepting the truth of what Hanna said and didn't, therefore, didn't have an evidentiary hearing. And I don't know what either side is taking that to mean, either you or your, what does he mean by he's accepting the truth? On the one level, if he's, if he means I believe that he believes that, I mean, I, I, I do not think he is lying. On the other hand, he could have misperceived. Then it seems to me you have a hard case. And does he need to do any more than that? What, what would an evidentiary hearing accomplish beyond that, i.e., beyond credibility? If he means I believe that what he's saying is true, then I, then it seems to me that, that you've established or, or gone at least a long way towards establishing innocence. So, which does, what does he mean? I agree, Your Honor. I find that puzzling myself. Because, as you said, if the district court judge says I believe he believes it, then the only way to, to inquire into the basis of that belief to find out if it's credible or not is through putting him on the stand, through finding out, through questioning him, and through cross-examining him. I, I wouldn't say credible at that point. I'd say whether he's right or whether, you know, whether he, he was accurate. As opposed to credible usually means is he telling, does he, is he lying? Yeah. Does he believe he's telling the truth? It's difficult to see how he could have told that story with that much detail that had so much internal corroboration. I don't think it's difficult at all. He got to know Mr. Cox in prison, presumably got the details from him. I, I think that's as likely an inference as he happened to remember. What, these events occurred eight years before he gave the declaration? Correct. Seems much more likely that he got the details from the defendant than that he had some independent memory of all of them eight years later. The story from the declaration and from Mr. Hanna himself is that he was at Ironwood State Prison and out in the yard kind of talking to other prisoners about things they'd seen and describing this, this crime. He saw the shooting and the details of it. And one of the people he was talking to then said, oh, hey, that sounds like Paul Cox's case. Where is it? This is in the declaration? It's referred to in the second declaration. I can find the citation to that if you'd like. I've got it back there. I'll give it to you when I come back for rebuttal. But basically, to inquire beyond that, to find out, you know, the basis of, of their later relationship in the prison, again, I think would require putting them on the stand. Because on the basis of what we have there, if you accept the declaration on its face, then, then there is no, no room for bias. Well, I guess, let me tell you, the problem I have with your position on this is just looking at the standard that AEDPA requires us to apply. The district judge's job is not to look at the guy, hear him testify live and decide whether he thinks the guy's telling the truth. There's an entire trial record that already exists. And the job of the judge deploying AEDPA's threshold standard is just to drop this additional piece of evidence into that mix and decide whether, by clear and convincing evidence, no reasonable juror would have convicted the guy. I don't see how we could possibly say that on this record, given, I mean, even if we accept that this new witness would have made a fine witness on the stand. Right. Well, there are two standards we're looking at here under AEDPA. One is the 2244B standard. That's the standard I'm referring to. Right. Under that one, basically, it's not, it seems to me not that high a standard. You have to find that no reasonable juror would have found the defendant guilty on, within a reasonable doubt. A jury in this record could, even hearing Mr. Hanna, is his name, testify, could have placed much more weight on the fact that your client never mentioned anything about a gun when he was interviewed by the, first interviewed by the police. And that is what the district court definitely seems to emphasize. I think there are two problems with that approach by the district court. Number one is that whether or not Mr. Cox told the police about Red having a gun goes to impeachability of Mr. Cox, of one of the three defense witnesses. It doesn't go necessarily to guilt itself. And number two, I do believe that the district court was erroneous in looking at that because Paul Cox was 20 at the time that all this occurred and had no history of serious interactions with the police. He had a clean record and he had found himself in a position where he had been terrified for his life and for that of his son and had to kill somebody. So he went to his mother, you know, in trauma and terror and his mother told him just deny everything, you'll be okay. So his police interrogation was very, very confused. It was all over the place. And as he said later on the stand, he really thought he had told the police why he was so scared of Kelvin Red. And he was shocked later to find out that he hadn't. So his lack of that detail in his report to the police I do think is understandable in the circumstances. And I'm sure the jury heard that explanation. Yes, they did. It's certainly plausible. I'm just saying that applying this standard, we'd have to find that no reasonable juror could have convicted him in light of this one new piece of evidence thrown into a fairly large mix of pieces of evidence that they already heard. I do think that the jury was torn. As we know, they deliberated for two full days and finally on the Friday afternoon just before Christmas, they chose the middle ground. They chose to compromise so that they could all go home to their families and start celebrating the holiday. And I think that points to quite a battle within the jury room as to which way to go. And had they known, and they did this on the basis of no concrete evidence of what happened to the gun. The one true fact they had was that even with the police. But there was a gun. Huh? Well, there was a gun. Yeah. Well, they had heard that there was a gun, but when the police arrived on the scene very shortly thereafter, there was no gun. That was the one thing that couldn't be controverted. If they had heard what happened to that gun, I think they would have said, okay, there's reasonable doubt here that it was, you know, that it was murder. But that's not the standard either. And let's, for a little while, it would be helpful if we talk about the relevant standards. I mean, that, as I understand, is the standard for getting to the second successive petition stage. But then you have this massive problem, which is that there is no Supreme Court case law actually accepting the Herrera Actual Innocence Standard, as amazing as that may seem. And but whatever it is, it isn't simply that the jury would have had a reasonable doubt. It's more than that. Right. The standard in the Ninth Circuit, which has recognized this claim of freestanding actual innocence, is that the convicted felon must affirmatively prove that he is probably innocent. Well, first of all, this is an Edpa case. So even if we, and so then we have, A, the problem that there is no clearly established Supreme Court law, and, B, even if you thought there was, it would be hard to fault the state for whatever standard it came up with because it's not, the Supreme Court doesn't have one. Right. I do think that there is a clearly established federal law on this. In Herrera, first of all, you have the majority that wrote the opinion assuming that there was such a standard. Assuming, that's fine. Right. And then the separate majority, though, finding it explicitly, Justice O'Connor, Kennedy, White, Blackmun, and Souter, all stated in their concurrences that there was such a standard. And then from then on, in that case and thereafter, you have the Supreme Court, I think on four, well, including Herrera, on four separate occasions, acting as if the standard existed. But didn't the Supreme Court at later points say it's an open issue? It did in the Osborne case. But then after that, in Davis. I mean, Davis was a non-articulated event. Right. But even in that case, in his dissent, Justice Scalia, he argued there that there was no clearly established federal law. But the fact that the majority ignored that, I think, means that they disagreed. All they did was set it back for a hearing, right? Excuse me? All they did was send it back for a hearing. Right. And if there hadn't been clearly established federal law, you know, what I'm positing is that they would have rejected the claim. Or they could have said we want to consider it after we have a whole record. Right. But why do that if there's no basis for the claim? Why send it back? I don't know. We haven't decided. It's an open question. Right. I just believe that repeated statements that, assuming there is such a claim, and repeated acting as if there is such a claim, but the evidence in each case doesn't rise to it, does constitute clearly established federal law. But in any event, if there is such a claim, even if we take the Ninth Circuit standard, they'd still have to prove something other than that the jury would have found a reasonable doubt. Right. We have to establish probable innocence. And I do think in this case we do. I do think the evidence proves that. In other words, it was probably an act in self-defense. Correct. Correct. And how do we do that? Do we look at Hanna's testimony and try to evaluate, and how does a reviewing court go through that process? Well, if we want to establish the credibility, if we don't want to accept it as credible on its face, then we would need to hold an evidentiary hearing in which to test and weigh the testimony. But the district court said he accepted it as credible. And it's credible, at least in the way that I'm using the term credible, i.e., this person essentially was there, which, of course, is questionable, and reports what he believes he saw. I believe that he is reporting what he believes he saw. And I still think that there was contrary evidence and that there isn't probable innocence. Right. It certainly comes to that conclusion because there were people saying opposite things then. Yeah. Again, as I mentioned earlier, I find it hard, though, to credit how looking at all the details given in the declarations, it's not like I might have been there and I might have seen something, I might have seen the guy, you know. Hanna says, I saw a gun. It was in the waistband. He tried to draw it and it got stuck. You know, later I saw his friends remove the gun from his waistband along with other objects. If you're going to, you know, if you're going to discredit that, I don't see any basis within the declaration itself for that. I think you would need to test it and say, you know, were you on drugs that night? Did you have any, you know, did you forget your glasses and did you fall asleep and dream at all? You know, you would need to have more if you're going to truly discredit. Thank you very much. We'll give you a minute. All right. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Stephanie Chow on behalf of Appellee Powers. The district court in this case properly dismissed the petition as failing to meet the requirements for a second or successive petition. After this court finds that there's prima facie evidence to permit the filing of a second or successive petition, the district court then is required to extensively review the court records and the newly provided evidence, which the court did in this case, and is statutorily required to dismiss it if the facts, the newly discovered facts, if proved and viewed in light of the entire court record, do not clearly and convincingly show that no reasonable fact finder would have found it. The district court, in fact, accepted Hannah's declaration as true. True, meaning I, in fact, saw all this stuff. Then how could he not conclude that he was innocent? Well, the district court did state, in fact, that it presumed the declarations to be true and credible. However, the evidence that was stated in the declarations, it found, was mostly cumulative of evidence already provided in trial for that. Well, yes, but to some degree it wasn't. And if, in fact, Hannah correctly saw, not just believed he saw, but correctly, if it was true that the victim had a gun, reached for the gun, and that his friends later took the gun, and that Hannah, in fact, saw all that,  which most of that evidence was presented to the jury. And the jury did find that there was no reason for it. But there was a question whether it was. See, this is what's confusing me. People said one thing, and people said the other thing, and the jury was supposed to decide what was true. The judge here, rather than having a hearing and determining, I don't know, I mean, he's not the jury anyway, so I don't know what he would decide. But he said, I accept it as true, and that's why I'm not having a hearing. What does it mean to accept it as true? Well, assuming that Mr. Hannah would have appeared at trial and testified to what he stated in his declaration. That's not accepting it as true. That's accepting as true that he would say it, but that's not accepting it as true. And accepting as true that that is what Mr. Hannah saw or believed that he saw, it still didn't change the evidence that, you know, it was shown or there was testimony that a gun was drawn when the victim was shot, and that the two friends of the victim then were taking things out of his pockets, and there was some time before the police arrived where they could have disposed of the weapon. But what needed to be proven in this case is that Mr. Cox acted in justifiable self-defense. The mere presence or not presence of a gun on the victim's body wouldn't have necessarily proved that he was innocent, that he had acted in reasonable self-defense. And, in fact, Mr. Hannah's declaration added something that would have been possibly detrimental to his defense, which is that the gun was stuck in the victim's waistband, that he was unable to draw it, whereas the only testimony from Mr. Cox's friends at trial, Mr. Brandt and Mr. Garcia, was that the gun was actually being drawn or had already been drawn when the victim was shot. Additionally, as the court stated, the petition should be denied on the merits because there is no clear U.S. Supreme Court precedent. It can't be said that the state court unreasonably applied U.S. Supreme Court law, but even if freestanding innocent claims exist, it would require an extraordinarily high burden of showing where the petitioner has to do more than just demonstrate doubt of his guilt but actually affirmatively prove that he's probably innocent. Can you remind me, what was the standard that the state court applied here to deny the second habeas petition? Presumably the state court, as it was a silent denial, under state law, a motion for a new trial for newly discovered evidence is denied if the evidence is cumulative or if it fails to show that even if true, would have proved his innocence, that the jury would not have convicted him of the offense. Which one? I'm sorry? Which one? The jury would not have convicted him or would have proved his innocence? It's a difference. But why does the state stand? The jury would not have convicted him. And which is similar to the, well, the jury would not have convicted him of second-degree murder, which is what the jury convicted him of in this case. And as I discussed during the first argument, the declarations that were provided 8 and 15 years later after the offense still, if assumed to be true, would not show that, would not demonstrate that Mr. Cox is probably innocent. Because he might not have been self-defense anyway. It still does not affirmatively prove that it was justifiable self-defense. I don't know the answer to this, but if he was confronted with somebody who was going for his gun and he saw that it was a gun and he saw the guy was reaching for it, did he have to wait until he took it out of his waistband before he could shoot him? Legally, that's not required, but the jury does have to find that the use of deadly force was reasonable and from what Mr. Cox knew that they would determine that a reasonable person would have similarly used deadly force in response. And given Mr. Hanna's declaration that the difference between, so given because Mr. Hanna said that it was stuck in his waistband, which is essentially he was having trouble getting it out, that could have meant that Cox should have waited until he got it out? Well, it could have indicated that it appeared obvious that the victim was impotent to draw any kind of weapon, even if there was one there. As Mr. Hanna stated, that's what he saw from some distance away. One last question, or it was the last question, but anyway. I gather that your ultimate position is that you can never have a habeas claim based on a Herrera actual innocence because there's no clearly established Supreme Court law, period, the end. And all the rest of this is sort of spinach, because your position is none of the rest of this matters because you can't have at this point in time a habeas based on actual innocence. Is that your position? Essentially under ADPA, because that's not a clearly established basis cognizable for federal relief, then yes, that would be. Why isn't it, in light of the cases and the statements that she recited, sufficiently clearly established? Because the U.S. Supreme Court hasn't come out with a decision that explicitly and squarely That we hold, da-da, da-da, da-da. Yes, with our case that a freestanding innocence claim exists, and it has actually expressly stated several times that they declined to decide that issue and that it is still an open question. Then she has an alternative argument, which is basically a California due process argument, which is whatever may be the clearly established Supreme Court merits law, California does recognize such a claim and has some obligation, due process obligation, to apply it fairly or apply it in accordance with its enunciated standard. You didn't comment on that argument in your brief, as I recall. I'm sorry? I don't remember you commenting on that argument in your brief. I honestly don't recall specifically the briefing, but the state court would have applied its own law at the time that it considered Mr. Cox's claims. And he has not, at least the state court wasn't, I mean, I suppose it wasn't argued to the state court and they weren't given the opportunity to address that argument, presuming that Mr. Cox believed the state misapplied its own. You're saying it's a non-exhausted issue is essentially what you're saying. Yes. That issue. Or either that or, look, it's a state law issue. As the state considered it, presumably they It's like the state ruling on evidence. That's state law. Presumably correctly applied it. Right. Yes. If there are no further questions, then I'm prepared to submit. Thank you very much. Thank you. I'll give you a minute, Roberto. Just a few very quick points. First of all, the ER site regarding the part of the amended declaration where he explains the circumstances is ER 134. You submitted a 28-J letter on a recent case. Right. I couldn't quite see the relevance. Hurls v. Ryan basically goes to the point that we satisfy 2254d-2 in that it's just another very recent finding by this court that when the state does not conduct the review that it says it will and that it should, that that is a basis for finding that the 2254d threshold has been met. But, again, if it looked at the same record and came to the same conclusion that the district court here did, how could it say it didn't conduct the review? In other words, suppose the state court, sub silencio, had done exactly the same thing that the district court did, i.e., looked at the evidence, it took it to decide that it didn't meet the state standard. Well, the state is required by its own laws, Duval and its regulations and such, when, oh, by the way, one thing I wanted to, this actually ties into one of the questions that you addressed with my opponent. The state court, it wasn't a silent denial. It found that no prima facie case had been made. That was the Riverside County Superior Court's opinion. That was then the silent denial as you look through to the reasoned opinion, which was no prima facie case on the basis of this. The state court's own procedures say that, basically, they will take the evidence presented as fully true, and if there is a prima facie case, they will then ask for a response by the government or an evidentiary hearing. Now, our contention is it is unreasonable, especially considering that this court did find a prima facie case was made on the basis of the same evidence, to say that there was no prima facie case was made. So that goes. . . What standard? A prima facie case of what? What's the standard that the state court was applying? Aside from just a prima facie case? Of what? Of what? Oh, the claim, which is actual innocence here. It is probably innocence. In their case, it would be. . . The standard, we apply a slightly different standard when we're applying AEDPA's threshold under 22, what is it, 2244, right? Right. This is. . . Yeah, I'm actually looking at 2254D for that. Right. Did that answer your question, Your Honor? It's helpful. Okay, thank you. Thank you very much. And another quick thing I wanted to say is that the evidence in this case is very different from that in Herrera, Carragher. It's much stronger. A direct comparison of the weight of the evidence, I think, also goes to show why in those cases they assumed there was a standard, but they didn't, the evidence didn't meet it. So. . . Okay. Thank you very much. Thank you very much. Thank both parties. It's a useful argument and an interesting case. Cox v. Menjiv Powers is submitted.
judges: Carr, Berzon, Watford